IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEMSA ULASIM ARACLARI SANAYI VE TICARET A.S., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civ. No. 18-698-RGA |
| CH BUS SALES, LLC, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant CH Bus Sales, LLC ("CH Bus") has moved to enjoin an arbitration with Plaintiff Temsa Ulasim Araclari Sanyi Ve Ticaret A.S. ("Temsa") currently proceeding in New York before the American Arbitration Association ("AAA"). (D.I. 4). For the reasons set forth below, a decision on this motion is stayed until after the arbitrator decides the motion CH Bus simultaneously filed with the arbitrator to dismiss the arbitration for lack of jurisdiction. (*See* D.I. 17 at 2; *Id.* at Ex. A).

**I.   BACKGROUND**

Temsa manufactures motorcoaches sold worldwide. (D.I. 15 at 3). On February 2, 2010, Temsa and CH Bus entered into a Distribution Agreement, by which CH Bus became an exclusive distributor of motorcoaches manufactured by Temsa. (D.I. 1-1 at ¶ 6). Under the Distribution Agreement, CH Bus was required to remit payment for the motorcoaches to Temsa within ninety days of the bill of lading. (D.I. 15-1 at § 4.5). The Distribution Agreement also required the parties to submit all disputes arising under the Distribution Agreement to arbitration before the AAA

1

applying the AAA's Commercial Arbitration Rules. (D.I. 15-1 at §17.3). Specifically, the Distribution Agreement states in relevant part:

> The parties will attempt in good faith to resolve amicably all disputes and claims arising under this Agreement. If the parties cannot amicably settle their differences, the parties shall submit all unresolved differences to arbitration. Arbitration will be held in New York, New York, in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association.

(*Id.*).[1]

The parties later entered into side-letter agreements, amendments to the Distribution Agreement, and a Security Agreement. (*See* D.I. 15-2; D.I. 15-3; D.I. 15-5; D.I. 15-6). The amendments to the Distribution Agreement did not affect the arbitration provision. (*See* D.I. 15-3). The side-letter agreements governed the sale of a specific set of motorcoaches identified therein and further provided that all disputes "arising from or related to" the side-letter agreements shall be resolved by the courts located in the State of Delaware.[2] (D.I. 15-2; D.I. 15-5). The Security Agreement granted Temsa a security interest in every motorcoach Temsa sold to CH Bus in order to secure CH Bus's obligation under the Distribution Agreement to pay the full purchase price for each motorcoach. (D.I. 15-6, Recitals). Like the side-letter agreements, the Security Agreement provided that any disputes "arising from or related to" the Security Agreement shall be resolved by the courts located in the State of Delaware. (*Id.* at § 4).

---

[1] The Distribution Agreement provides that New York courts would have exclusive jurisdiction over any "equitable relief to enforce the terms of this Agreement." (D.I. 15-1 at § 17.3). It further provides that the Distribution Agreement is to be construed under New York law. (*Id.* at § 17.10).

[2] *See* D.I. 15-2 (stating that the letter amends the terms of the Distribution Agreement for "covering such sale"); D.I. 15-5 (stating that the letter amends the terms of the Distribution Agreement "solely with respect to the Payment Terms … for the Subject Motorcoaches and solely for the limited Purpose described herein").

2

Sometime between the execution of the Distribution Agreement and now, the parties' business relationship soured. On March 22, 2018, Temsa filed a demand for arbitration against CH Bus with the AAA. (D.I. 15-8). The arbitration demand sets forth seven counts: (1) breach of the Distribution Agreement, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) promissory estoppel, (5) conversion, (6) accounting, and (7) declaratory judgment. (*Id.* at ¶¶ 65-91). Separately, on April 9, 2018, Temsa commenced an action in the Delaware Court of Chancery to secure its rights in the collateral in accordance with the parties' Security Agreement. (D.I. 1-1, Ex. A). That action was removed to this court. The complaint in this court sets forth three counts: (1) declaratory judgment; (2) specific performance; and (3) imposition of a constructive trust. (D.I. 1-1, Ex. A at ¶¶ 15-40).

## II. DISCUSSION

Courts, not the arbitrator, decide questions of arbitrability unless there is "clear and unmistakable evidence" that the parties intended otherwise. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Opalinski v. Robert Half Int'l. Inc.*, 761 F.3d 326, 335 (3d Cir. 2014); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006). "Virtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (internal punctuation omitted) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)); *Willie Gary*, 906 A.2d at 78 (adopting the majority view that "where the arbitration clause provides that the arbitration will be conducted in accordance with the rules of the American Arbitration Association (AAA), that statement constitutes clear and unmistakable evidence of the parties' intent to have an arbitrator determine substantive arbitrability").

Here, the parties provided clear and unmistakable evidence that arbitrability is to be determined by the arbitration panel, and not the court, because the parties incorporated the AAA rules into the arbitration provision of the Distribution Agreement, and the Distribution Agreement serves as the basis of Temsa's claims in the arbitration. (*See* D.I. 15-1 at §17.3). CH Bus argues that the arbitration provision in the Distribution Agreement has been superseded by—and conflicts with—amendments to the Distribution Agreement and the wholly separate Security Agreement. This assertion does not seem entirely accurate. First, the amendments to the Distribution Agreement made no changes to the arbitration provision. (*See* D.I. 15-3). Second, the side-letter agreements and the Security Agreement have conflicting dispute resolution provisions—because they identify Delaware courts as the forum to resolve any disputes—but it is not clear at this stage of the proceedings that those agreements superseded the Distribution Agreement. Third, Temsa's arbitration demand does discuss the March 17, 2017 side-letter agreement and the Security Agreement, but its claims in the arbitration demand appear to rest primarily on the Distribution Agreement.[3] The discussion in the demand of the side-letter agreement and the Security Agreement is an entanglement that gives the court pause, but not enough to overcome the clear and unmistakable evidence that the parties intended for the arbitrator, and not the court, to decide in the first instance issues related to arbitrability.

---

[3] Temsa has represented that the motorcoaches subject to the September 27, 2011 side-letter agreement are not at issue in the arbitration. (D.I. 15 at 4).

4

## III. CONCLUSION

For the foregoing reasons, CH Bus' Motion to Enjoin the Arbitration (D.I. 4) is stayed until after the arbitrator decides the motion CH Bus simultaneously filed with the arbitrator to dismiss the arbitration for lack of jurisdiction. An appropriate order will be entered.

Dated: October 9, 2018

_____
UNITED STATES DISTRICT JUDGE