## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TEMSA ULASIM ARACLARI SANAYI VE TICARET A.S., | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 18-698-RGA |
| v. | ) ) | |
| CH BUS SALES, LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
DEFENSES, COMPEL ARBITRATION OR IN THE ALTERNATIVE TO STAY
DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

**McCARTER & ENGLISH, LLP**

David A. White  (DE# 2644)
Matthew J. Rifino (DE# 4749)
405 N. King Street, Ste 800
Wilmington, Delaware 19801
Telephone:  302.984.6300
Facsimile:  302.984.6399

Thomas J. Finn (*Pro Hac Vice*)
James E. Regan (*Pro Hac Vice*)
185 Asylum Street
Hartford, CT 06119
Telephone:  860.275.6771
Facsimile:  860.560.5908

*Attorneys for Plaintiff*

Dated:  October 12, 2018

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... II

I.  NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

II.  SUMMARY OF THE ARGUMENT .............................................................................. 2

III.  STATEMENT OF FACTS ............................................................................................. 2

    A.  The Distribution Agreement and Amendments ................................................ 2

    B.  Security Agreement ........................................................................................... 6

    C.  CH's Counterclaims .......................................................................................... 7

    D.  CH's Affirmative Defenses .............................................................................. 10

IV.  ARGUMENT .................................................................................................................. 11

    A.  CH's Counterclaims Should be Dismissed Because the Parties' Agreed to Arbitrate All Disputes Arising Under The Distribution Agreement .................... 12

        i.  The Federal Arbitration Act .................................................................. 12

        ii.  Lack of Subject Matter Jurisdiction ..................................................... 13

        iii.  Improper Venue ...................................................................................... 14

        iv.  Failure to State a Claim Upon Which Relief Can Be Granted ............... 15

    B.  CH's Affirmative Defenses Should Be Stricken Because the Parties' Agreed to Arbitrate All Disputes Arising Under The Distribution Agreement. ......................................................................................... 16

    C.  The Court Should Compel Arbitration of CH's Counterclaims and Affirmative Defenses. ....................................................................................... 16

    D.  Alternatively, If The Court Is Not Inclined to Dismiss CH's Counterclaims and Strike CH's Affirmative Defenses, It Should Stay Them Pending Arbitration. ....................................................................................... 18

V.  CONCLUSION ............................................................................................................... 19

ME1 28242294v.8

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aliments Krispy Kernals, Inc. v. Nichols Farms,*
    851 F.3d 283 (3d Cir. 2017) ................................................................ 16

*AT & T Technologies, Inc. v. Communications Workers of America,*
    475 U.S. 643 (1986) ........................................................................... 17

*BAE Systems Aircraft Controls, Inc. v. Eclipse Aviation Corp.,*
    224 F.R.D. 581 (D. Del. Nov. 10, 2004) ................................................ 12

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,*
    809 F.3d 746 (3d Cir. 2016) ................................................................ 12

*China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.,*
    747 F.Supp. 1101 (D. Del. Sept. 7, 1990) ............................................ 18

*FUJIFILM North America Corporation v. Geleshmall,*
    239 F.Supp.3d 640 (E.D.N.Y. 2017) ..................................................... 19

*Gay v. CreditInform,*
    511 F.3d 369 (3d Cir. 2007) ................................................................ 13

*John Hancock Mut. Life. Ins. Co. v. Olick,*
    151 F.3d 132 (3d Cir. 1998) ................................................................ 16

*Kerr-McGee Chem., LLC v. Kemira Pigments Oy,*
    2003 WL 22299045 (D. Del. Oct. 7, 2003) .......................................... 11

*In re Mobile Telecommunications Technologies, LLC,*
    243 F.Supp.3d 478 ............................................................................. 15

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983) .............................................................................. 12

*Myers v. American Dental Ass'n,*
    695 F.2d 716 (3d Cir. 1982) ................................................................ 14

*PaineWebber, Inc. v. Hartmann,*
    921 F.2d 507 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter*
    *Reynolds*, 537 U.S. 79 (2002) ............................................................ 16

*Prima Paint Corp. v. Flood & Conklin Mfg.,*
    388 U.S. 395 (1967) ........................................................................... 12

ME1 28242294v.8

*Sagal v. First USA Bank, N.A.*,
   69 F.Supp.2d 627 (D. Del. Aug. 30, 1999)...........................................................................13

*Sanum Investment Limited v. San Marco Capital Partners LLC*,
   263 F. Supp.3d 491 ...........................................................................................................15

*Senju Pharmaceutical Co., Ltd. V. Apotex, Inc.*,
   921 F.Supp.2d 297 (D. Del. Feb. 6, 2013) ........................................................................16

*Seus v. John Nuveen & Co.*,
   146 F.3d 175 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp.–
   Al. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ..............................11

*Stateside Machinery Co. v. Alperin*,
   591 F.2d 234 (3d Cir. 1979) ..............................................................................................17

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
   609 F.Supp.2d 353 (D. Del. March 30, 2009) ...................................................................16

*Trippe Mfg. Co. v. Niles Audio Corp.*,
   401 F.3d 529 (3d Cir. 2005) ..............................................................................................16

*UBS Fin. Services, Inc. v. W. Virginia Univ. Hosps., Inc.*,
   660 F.3d 643 (2d Cir. 2011) ..............................................................................................14

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ...........................................................................................................12

*Wright v. Early Warning Systems, Inc.*,
   2012 WL 579310 (D. Del. Feb. 22, 2012)....................................................................13, 14

## FEDERAL STATUTES

9 U.S.C. § 1 ...................................................................................................................................12

## RULES

Fed. R. Civ. P. 12(b)(1)............................................................................................................13, 14

Fed. R. Civ. P. 12(b)(6)...................................................................................................................15

Fed. R. Civ. P. 12(f) ........................................................................................................................16

ME1 28242294v.8

## I.   NATURE AND STAGE OF THE PROCEEDINGS

On February 2, 2010, Plaintiff Temsa Ulasim Araclari Sanayi Ve Tircaret A.S. ("Temsa") commenced arbitration against Defendant CH Bus Sales, LLC ("CH") to enforce its rights pursuant to the parties' February 2, 2010 Distribution Agreement ("Distribution Agreement"). On April 9, 2018, Temsa commenced the instant action in the Delaware Court of Chancery, which CH removed to this Court.  In this action, Temsa seeks to secure its rights in collateral in accordance with the parties' January 5, 2016 Security Agreement ("Security Agreement").  The Arbitration, which is currently pending before the American Arbitration Association as Case No. 01-18-0001-2496 (the "Arbitration"), is based solely on Temsa's claims arising out of the Distribution Agreement.   The parties freely chose to apply different venue and choice of law provisions to specific aspects of their contractual relationship and bargained for different forums based on the nature of the disputes and the agreement under which the disputes arise.

In an effort to avoid the Arbitration, and deprive Temsa of the contractual benefits for which it bargained, CH filed pleadings in both this Court and in the Arbitration seeking to enjoin and dismiss the Arbitration.   On August 24, 2018, CH filed Affirmative Defenses and Counterclaims in this action only (D.I. 26).   With the exception of CH's generic contract Affirmative Defenses claiming failure to state a claim, laches, duress, failure to mitigate and frustration of performance (First, Fourth, Fifth, Sixth and Ninth Affirmative Defenses), each Affirmative Defense and each of the Counterclaims arise solely under and relate to the Distribution Agreement and, therefore, should have been asserted in the Arbitration and are not properly before this Court.

This is Temsa's Opening Brief in Support of its Motion to Dismiss Counterclaims, Motion to Strike Affirmative Defenses and Compel Arbitration or in the Alternative to Stay Defendant's Affirmative Defenses and Counterclaims.

ME1 28242294v.8

## II.    SUMMARY OF THE ARGUMENT

1.    The arbitration provision contained in the Distribution Agreement is binding and enforceable and requires that all disputes arising under the agreement be adjudicated in New York, New York before the American Arbitration Association, applying the AAA's Commercial Rules and New York substantive law.  Accordingly, CH's Second, Third, Seventh and Eighth Affirmative Defenses and each of the Counterclaims, which arise solely from the Distribution Agreement, are improperly before this Court.  Therefore, CH's Second, Third, Seventh and Eighth Affirmative Defenses should be stricken and CH's Counterclaims should be dismissed.

2.    If the Court is not inclined to strike CH's Affirmative Defenses and dismiss CH's Counterclaims, the Court should stay the Affirmative Defenses and Counterclaims pending a decision by the arbitrators on the arbitrability of CH's Affirmative Defenses and Counterclaims should CH decide to assert the same in the Arbitration.

## III.    STATEMENT OF FACTS

### A.    <u>The Distribution Agreement and Amendments</u>

Temsa is a leading manufacturer of Motorcoaches which are manufactured in the Republic of Turkey and sold worldwide.  Compl. ¶ 1.  Prior to being terminated for cause for, *inter alia*, nonpayment, CH was the exclusive distributor and servicer of Temsa Motorcoaches in the United States, Canada, Guam and the Commonwealth of Puerto Rico (the "Territory").  Compl. ¶ 5.  CH became Temsa's exclusive distributor in the Territory by virtue of the Distribution Agreement, which was executed on or about February 2, 2010.  Compl. ¶ 6; Exhibit A attached hereto[1].  The Distribution Agreement requires the parties to submit all disputes

---

[1]In order to avoid inundating the Court with documents not relevant to the issue of arbitrability, the Distribution Agreement's exhibits are not filed herewith.

related to the Distribution Agreement to arbitration in New York, New York before the American Arbitration Association ("AAA") applying AAA's Commercial Arbitration Rules:

> The parties will attempt in good faith to resolve amicably all **disputes and claims arising under this Agreement**.  If the parties cannot amicably settle their differences, the parties shall submit all unresolved differences to arbitration.  Arbitration will be held in New York, New York, in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association.  The decision of the arbitrator(s) will be final and binding on all parties, and judgment upon any arbitrator's decision may be entered in any court having competent jurisdiction over like matters.  In the event either party seeks equitable relief to enforce the terms of this Agreement, the federal and state courts located in the State of New York shall have exclusive jurisdiction over such issues and the parties hereby agree to submit to the jurisdiction of such courts.

Ex. A at § 17.3 (emphasis added).  The Distribution Agreement further calls for the application of New York law.  Ex. A at § 17.10.

The Distribution Agreement was amended four times, none of which deprived the arbitration panel of jurisdiction over the Affirmative Defenses and Counterclaims.  The first amendment was a letter agreement executed on or about September 27, 2011.  *See* Compl., ¶ 7; Exhibit B attached hereto. The September 27, 2011 Letter Agreement, by its express terms, applied only to "ten (10) Temsa TS 35 buses referenced in a purchase order issued by Customer dated November 19, 2010 and Order Confirmation issued by Temsa dated February 8, 2011. This letter amends certain terms of the Distribution Agreement between Temsa and [CH] dated February 2, 2010 **covering such sale**."  Ex. B p. 1. (emphasis added).  By its express language, the September 27, 2011 Letter Agreement amended the Distribution Agreement only as it relates to the sale of the ten specific Motorcoaches.  As to those ten Motorcoaches, the September 27, 2011 Letter Agreement contained the following choice of law and venue provisions:

> **This Agreement** shall be governed by and construed in accordance with the laws of the State of Delaware without reference to the principles on the conflict of laws.  **All disputes arising from or related to this Agreement** shall be resolved by the courts located in the State of Delaware.

Ex. B at p. 2 (emphasis added).  None of the Motorcoaches referenced in this Amendment have any relevance to the Affirmative Defenses and Counterclaims and, therefore, this Amendment does not confer jurisdiction onto this Court.

The second amendment to the Distribution Agreement was executed on or about May 5, 2014.  *See* Compl., ¶ 7; Exhibit C attached hereto.  This Amendment made a number of changes to specifically enumerated provisions of the Distribution Agreement, none of which are substantively relevant to the Affirmative Defenses and Counterclaims    Ex. C at § 3.  What is significant to the Affirmative Defenses and Counterclaims is that this Amendment did not amend the Distribution Agreement's venue or choice of law provision.  *See*, Ex. C.  Rather, as to all provisions not expressly amended by the May 5, 2014 Amendment, the parties acknowledged and ratified the terms of the Distribution Agreement. *See* Ex. C, § 4 (emphasis in original).  The May 5, 2014 Amendment and its ratification of the Distribution Agreement demonstrates that the parties intended the Distribution Agreement and its arbitration and choice of law provisions to remain in effect and, therefore, govern the Affirmative Defenses and Counterclaims.

The third amendment to the Distribution Agreement was executed on or about December 22, 2014.  *See* Compl., ¶ 7; Exhibit D attached hereto.  The purpose of the December 22, 2014 Amendment was to address CH's desire to engage in a reorganization from a corporation to an LLC and to ensure that the Distribution Agreement, the Security Agreement and a separate Intercreditor Agreement between the parties properly accounted for the reorganization. Ex. D at §§ D, E.  The December 22, 2014 Amendment does not contain a venue or choice of law provision.  Instead, the December 22, 2014 Amendment contains two express acknowledgments and ratifications by CH of the terms of the Distribution Agreement.  *See* Ex. D at §§ 4(a), 6 (emphasis added).  The December 22, 2014 Amendment makes clear that the

4

Distribution Agreement's arbitration and choice of law provisions continue to govern the Affirmative Defenses and Counterclaims.

The fourth and final amendment to the Distribution Agreement is the March 17, 2017 Letter Agreement. *See* Compl., ¶ 25; Exhibit E attached hereto. To the extent that the March 17, 2017 Letter Agreement amends the Distribution Agreement, it does so only as relates to the payment terms of four specific Motorcoaches. Ex. E at § 2. As to the payment obligations related to the four specifically enumerated Motorcoaches, the Letter Agreement states that disputes are to be decided by Delaware courts applying Delaware law. Ex. E at ¶ 7. This acknowledged "limited amendment to the Distribution Agreement", Ex. E, did not change the Distribution Agreement's requirement that all other disputes related to the Distribution Agreement must be submitted to arbitration applying New York law. CH makes no claims in the Affirmative Defenses and Counterclaims related to this Amendment or these Motorcoaches and, therefore, the entirety of the Affirmative Defenses and Counterclaims continues to be governed by the requirement that disputes under the Distribution Agreement be submitted in the Arbitration.

When the Distribution Agreement and all of the amendments are examined in their entirety and applied in accordance with their clear and unambiguous language, the Distribution Agreement's arbitration and New York law provisions are valid and enforceable and require that "all disputes and claims arising under [the Distribution Agreement] be submitted and adjudicated in the Arbitration." With respect to Temsa's affirmative claims, the Court has held "the amendments to the Distribution Agreement did not affect the arbitration provision." (D.I. 39 at p. 2.) The Court further held, "the amendments to the Distribution Agreement made no changes to the arbitration provision." *Id.* at p. 4. The result should be no different with respect to CH's

Affirmative Defenses and Counterclaims because they arise under the Distribution Agreement and the language of the arbitration clause clearly encompasses these claims.

**B.     Security Agreement**

On or about January 5, 2016, the parties entered into the Security Agreement which governs Temsa's ownership of and security interest in products which Temsa has sold and delivered to CH but for which CH has not paid Temsa.  Compl. ¶¶ 9, 10; Exhibit F attached hereto at p. 1.  The Security Agreement specified that the purpose of the security interest created by the Security Agreement was "solely to secure the obligations of [CH] to pay the full purchase price for each such Vehicle pursuant to the terms of the Distribution Agreement…".  Ex. F at § 1(a).  Breach by CH of the Distribution Agreement constitutes one of the events of default under the Security Agreement.  Ex. F at § 1(f).

Unlike the Distribution Agreement, the Security Agreement contains no provisions regarding the right to sell Motorcoaches, the specific Motorcoaches that will be sold, CH's appointment as the exclusive distributor in the Territory, the purchase price of Motorcoaches, sales targets, shipping requirements, warranties, marketing, reporting obligations, payment terms, repair of Motorcoaches, processing of end user warranty claims, purchase of spare parts, the term of CH's appointment as exclusive Distributor, termination of the exclusive distributorship, the permissible grounds for termination, the parties' respective rights and obligations upon termination, and the myriad other terms that govern the parties' relationship as manufacturer and distributor.  *See,* Ex. F.  Rather, those terms – and many others – are contained in the Distribution Agreement and governed thereby.  The claims contained in the Affirmative Defenses and Counterclaims relate exclusively to, and arise exclusively from, the Distribution Agreement and do not implicate Temsa's ownership of and security interest in Motorcoaches and

6

spare parts for which CH has not paid Temsa.  The Affirmative Defenses and Counterclaims, therefore, must be asserted exclusively in the Arbitration.

### C.   CH's Counterclaims

On August 24, 2018, CH asserted Counterclaims in the Delaware Action, which on their face, arise under and relate to Temsa's purported breaches of and failure to honor its obligations under the Distribution Agreement.  Consequently, the Counterclaims should be dismissed and compelled to arbitration.

CH cannot legitimately dispute that the Counterclaims arise under the Distribution Agreement.  Indeed, CH's express allegations acknowledge that the Distribution Agreement is the document from which CH's claims arise.  Indeed, in support of the first counterclaim for Fraudulent Inducement CH alleges:

> Temsa's representation in the **Distribution Agreement**… was false… CH Bus justifiably relied upon Temsa's representation in the **Distribution Agreement**… CH Bus suffered damages as a result of its reliance upon Temsa's misrepresentations because it has expended millions of dollars in connection with the motor coaches supplied under the **Distribution Agreement**…

Answer, Affirmative Defenses and Counterclaim (D.I. 26, ¶¶ 28, 31, 32) (emphasis added).  CH has acknowledged through its own allegations that this claim arises under the Distribution Agreement and, therefore, CH was required to assert this claim in the Arbitration.

In support of the second counterclaim for Breach of Contract related to Warranty Reimbursement, CH expressly acknowledges that its allegations arise under the Distribution Agreement and expressly seeks relief thereunder: "Temsa has breached the Distribution Agreement by failing to reimburse CH Bus the costs incurred by CH Bus in connection with warranty and defect repairs…".  *Id.* at ¶42.  CH goes on to conclude that it is entitled to recover damages it has sustained as a result of "Temsa's breach of the Distribution Agreement…"  *Id.* Having expressly alleged that its claim arises under the Distribution Agreement, CH cannot

7

dispute that the Distribution Agreement governs this counterclaim and, therefore, CH is required to submit this claim in the Arbitration.

In support of the third counterclaim for Breach of the Distribution Agreement – Failure to Supply Units, CH again expressly acknowledges that its claim arises out of and is governed by the Distribution Agreement.  CH alleges that Temsa breached the Distribution Agreement by its purported "failure to supply units pursuant to Section 2.13.1 of the Distribution Agreement." *Id.* at ¶45.  CH further alleges that "Temsa breached the Distribution Agreement by failing to deliver TS45 coaches to CH Bus in 2017…" and further breached "the Distribution Agreement by failing to provide marketable products to CH Bus." *Id.* at ¶46, 47.  The third counterclaim arises under the Distribution Agreement and must be arbitrated.

In support of the fourth counterclaim for Breach of Contract and Breach of Distribution Agreement – Failure to Reimburse, CH continues to acknowledge and allege that its claims arise under the Distribution Agreement.  The fourth counterclaim is substantially the same as the third counterclaim, alleging that "Temsa agreed to pay to CH Bus the sum of $250,000 as reimbursement of shipping costs related to TS30 coaches.  Despite its agreement to so pay, Temsa failed to remit such payment to CH Bus." *Id.* at ¶51.  "Temsa's failure to remit the $250,000 payment is a breach of the Distribution, and/or a breach of a subsequent contract between Temsa and CH Bus providing for such payment." *Id.* at ¶52.  The count further alleges that CH is entitled to its attorneys' fees and costs "pursuant to Section 14.3 of the Distribution Agreement." *Id.* at ¶54.  There can be no dispute that this fourth counterclaim arises under the Distribution Agreement.

The fifth counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing also falls squarely under the Distribution Agreement.  CH alleges that "to the extent the

express provisions of the Distribution Agreement do no address Temsa's conduct, Temsa breached the implied covenant of good faith and fair dealing." *Id.* at ¶ 56. Here again, CH by its own express allegations acknowledges that this is a claim arising from the Distribution Agreement and, therefore, subject to binding arbitration.

The sixth counterclaim for Tortious Interference with Prospective Business Opportunity is also a claim that arises under the Distribution Agreement. In the sixth counterclaim, CH alleges that Temsa blocked and interfered with CH's attempt to sell its business to a third party. The only business CH was in was that of Temsa's distributor, which relationship only exists as a result of and based on the terms of the Distribution Agreement. CH alleges that Temsa "refused to cooperate in the process and intentionally thwarted" CH's sale of its business, which can only mean sale of CH's rights under the Distribution Agreement. *Id.* at ¶ 66. Critically, the Distribution Agreement requires that CH obtain Temsa's approval to sell its business: "[t]his Agreement is personal to [CH] and no obligations of [CH] under this Agreement may be assigned, delegated or subcontracted without the prior written permission of [Temsa], such permission not to be unreasonably withheld." Ex. A, § 2.2. The adjudication of CH's sixth counterclaim turns on whether Temsa violated this provision of the Distribution Agreement and, therefore, this claim must be submitted in the Arbitration.

CH's seventh counterclaim for Tortious Interference - Poaching Employees also arises under and relates solely to the Distribution Agreement and the parties relationship thereunder. CH alleged that "Temsa has induced CH Bus Contract Employees to breach their contracts with CH Bus..." and that "Temsa has solicited, and continues to attempt to solicit, CH Bus Non-Contract Employees to leave the employ of CH Bus and to join Temsa." Id. at ¶¶ 74, 77. Again, the only basis for Temsa to purportedly "poach" CH employees arises under the Distribution

9

Agreement.  But for that agreement, CH employees would have no connection to Temsa.  The Distribution Agreement governs the parties' relationship including CH's obligation to "employ competent and experienced sales personnel and representatives."  Ex. A at § 2.3.   Moreover, the Distribution Agreement requires that Temsa develop and offer reasonable levels of training and technical assistance to CH and its employees in the use and operation of the products purchased from Temsa.  Ex. A at § 2.13.5.   Without both CH's and Temsa's obligations under the Distribution Agreement, Temsa would not have had the opportunity to allegedly "poach" CH employees.   The claim that Temsa "poached" employees who are only employed by virtue of the existence of the Distribution Agreement is a dispute that arises under the Distribution Agreement and must, therefore, be asserted in the Arbitration.

Each of CH's Counterclaims arise under the Distribution Agreement and, therefore, CH was obligated to submit the Counterclaims in the Arbitration.  The Counterclaims should, therefore, be dismissed.

### D.    CH's Affirmative Defenses

With the exception of CH's generic Affirmative Defenses for failure to state a claim (First Affirmative Defense), laches (Fourth Affirmative Defense), duress (Fifth Affirmative Defense), failure to mitigate (Sixth Affirmative Defense) and frustration of performance (Ninth Affirmative Defense) each of CH's Affirmative Defenses allege facts which must be resolved in arbitration because they arise under the Distribution Agreement.  The Court, should, therefore, strike CH's Second, Third, Seventh and Eighth Affirmative Defenses.

CH's Second Affirmative Defense alleges that Temsa's own material breaches and failure to perform bar Temsa's claims.  This affirmative defense is based upon the allegations in CH's Counterclaims which allege that Temsa sold coaches to CH which had "faulty powertrains", "faulty water valves" and "significant vibration problems" among other defects.

*Id.* at ¶¶ 12, 14, 17, 18. CH expressly states that Temsa's warranty on the motor coaches arises pursuant to "Section 11.1 of the Distribution Agreement" and that all motor coaches "sold pursuant to the Distribution Agreement [had to] conform to Temsa's published warranties and specifications then in effect." Thus, by CH's own admission, the material breaches and failure to perform that CH alleges by way of the Second Affirmative Defense arise solely under the Distribution Agreement and must be submitted in the Arbitration.

With regard to CH's Third Affirmative Defense alleging unclean hands; CH's Seventh Affirmative Defense alleging a right to offset; and CH's Eighth Affirmative Defense alleging recoupment – these claims logically can only arise from and relate to the Distribution Agreement and Temsa's claims asserted in the Arbitration. CH has absolutely no claims that arise under or relate to the Security Agreement and, therefore, the only possible facts to support unclean hands, and the only possible claims to offset or obtain recoupment necessarily arise from CH's claims under the Distribution Agreement. In fact, each fact upon which CH would base these Affirmative Defenses are necessarily the same facts upon which CH based its Counterclaims, all of which belong in the Arbitration. Therefore, the Third, Seventh and Eighth Affirmative Defenses should be stricken.

## IV.   ARGUMENT

Where a party to a binding arbitration agreement is sued in federal court on a claim that the party has agreed to arbitrate, it is entitled under the Federal Arbitration Act (the "FAA") to a dismissal if all claims are arbitrable or alternatively, to a stay of the court proceeding pending arbitration and to an order compelling arbitration. *See Seus v. John Nuveen & Co.,* 146 F.3d 175, 179 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp.–Al. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (citing 9 U.S.C. §§ 3-4); *Kerr-McGee Chem., LLC v. Kemira Pigments Oy,* 2003 WL 22299045, at *7 (D. Del. Oct. 7, 2003). Here, the parties

have agreed to submit the disputes that CH has raised in its Affirmative Defenses and Counterclaims to arbitration.  By incorporating the AAA arbitration rules into the Distribution Agreement, the parties have also clearly and unmistakably agreed to arbitrate arbitrability.  *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016). Consequently, Temsa is entitled to a dismissal of CH's Counterclaims and to have CH's Affirmative Defenses stricken.  Alternatively, the Court should compel arbitration and stay the Affirmative Defenses and Counterclaims until after they are filed in the Arbitration and the arbitrator has decided whether it has jurisdiction.

### A.      CH's Counterclaims Should be Dismissed Because the Parties' Agreed to Arbitrate All Disputes Arising Under The Distribution Agreement.

#### i.      The Federal Arbitration Act

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et. seq., requires courts to enforce arbitration agreements in contracts involving interstate commerce. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 480 (1989).  It further requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 404 n. 12 (1967) (the Act was designed "to make arbitration agreements as enforceable as other contracts, but not more so."). Questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration.  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).  District courts may "dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration."  *BAE Systems Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. Nov. 10, 2004).  Because the Distribution Agreement contains an arbitration clause and because CH's Affirmative Defenses and Counterclaims arise, on their face, under that agreement, this Court should enforce

the Distribution Agreement according to its terms and strike the Affirmative Defenses and dismiss the Counterclaims.

     ii.  <u>Lack of Subject Matter Jurisdiction</u>

   A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the court to address the merits of a complaint or counterclaim. *Wright v. Early Warning Systems, Inc.,* 2012 WL 579310, at \*2 (D. Del. Feb. 22, 2012).  The party asserting the claims bears the burden to prove that jurisdiction does in fact exist.  *Id.* (citing *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n., Inc.,* 227 F.3d 62, 69 (3d Cir. 2000), *overruled on other grounds by Animal Science Products Inc. v. China Minmetals Corp.,* 654 F.3d 462 (3d Cir. 2011)).  Under Fed. R. Civ. P. 12(b)(1), the jurisdiction of the court may be challenged either facially or factually.  *Id.* (citing *Mortensen v. First Fed. Sav. And Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).  A motion to dismiss on the grounds that the dispute is governed by the FAA is a factual challenge.  *Id.*  If a valid and enforceable agreement to arbitrate governs the dispute, the court lacks jurisdiction.  *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999)).  Courts apply a "strong presumption" in favor of arbitration and resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.  *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007).

   The District of Delaware has routinely dismissed claims subject to mandatory arbitration. In *Sagal v. First USA Bank, N.A.*, 69 F.Supp.2d 627 (D. Del. Aug. 30, 1999), the defendant asked the Court to dismiss the suit under Federal Rule 12(b)(1), or in the alterative, to stay in favor of mandatory arbitration.  *Id.* at 632.  The Court granted dismissal in favor of arbitration. *Id.*  Likewise, in *Wright v. Early Warning Systems Inc.*, 2012 WL 579310 (D. Del. Feb. 22, 2012), the Court held that because the claims were subject to arbitration, the court lacked

jurisdiction over the claims pursuant to Fed. R. Civ. P. 12(b)(1) and granted the motion to dismiss for lack of subject matter jurisdiction. *Id*. at *4.

Here, Temsa's Motion to Dismiss must be granted because (1) there is a valid agreement to arbitrate set forth in the Distribution Agreement and (2) the Counterclaims asserted by CH in this action fall within the scope of the agreement to arbitrate. *See UBS Fin. Services, Inc. v. W. Virginia Univ. Hosps., Inc.,* 660 F.3d 643, 649 (2d Cir. 2011) ("Under New York…or Delaware law, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms[.]") (citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002) and *Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010)).   The Distribution Agreement contains an arbitration clause that clearly and unambiguously requires the parties to submit all unresolved disputes arising under the Distribution Agreement to arbitration.  Ex. A at § 17.3  The Counterclaims raised by CH fall within the scope of the agreement to arbitrate because the arbitration clause includes **all** disputes arising under it. Each of the Counterclaims arise under the Distribution Agreement or are implicitly predicated upon the relationship between Temsa and CH created and governed by the Distribution Agreement.  Therefore, this Court lacks jurisdiction over CH's Counterclaims.  For these reasons, Temsa's Motion to Dismiss for Lack of Subject Matter Jurisdiction should be granted.

       iii.    <u>Improper Venue</u>

As an additional and related basis to dismiss CH's Counterclaims, venue is improper in this Court because the parties have expressly elected the AAA as the venue for resolving their disputes.  A court may dismiss a lawsuit for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  Rule 12(b)(3) involves motions raising the defense of improper venue and, therefore, findings of fact are not required. *Myers v. American Dental Ass'n*, 695 F.2d 716, 729

(3d Cir. 1982).  On a motion to dismiss for improper venue, "the moving party has the burden of proving the venue is improper."  *In re Mobile Telecommunications Technologies, LLC*, 243 F.Supp.3d 478, 483 (D. Del. March 20, 2017).  Section 17.3 of the Distribution Agreement states, "Arbitration will be held in New York, New York, in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association."  Accordingly, this Court is not the proper venue for adjudicating CH's Counterclaims, which should be dismissed.

iv.     Failure to State a Claim Upon Which Relief Can Be Granted

As a final basis to support dismissal of CH's Counterclaims, a party may "move to dismiss in favor of arbitration pursuant to Rule 12(b)(6) if it is apparent on the face of the [counterclaim] and the documents relied upon therein that the… claims are subject to an enforceable arbitration clause."  *Sanum Investment Limited v. San Marco Capital Partners LLC*, 263 F. Supp.3d 491, 494 (D. Del. July 12, 2017) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013)).  In *Sanum*, the owners of an eighty percent interest in a casino and sixty percent interest in two slot clubs filed suit against the operator of the gaming assets claiming breach of fiduciary duty, breach of contract and conversion.  *Id.* at 493-94.  The operator moved to dismiss pursuant to Rule 12(b)(6) based on an arbitration clause in the agreement governing the parties' relationship.  *Id.*  The Court held that arbitration was required under the arbitration clause in the operative contract and granted defendants' motion to dismiss.  *Id.* at 497.  The result here should be no different.  As asserted above, it is apparent on the face of CH's Counterclaims that they arise under the Distribution Agreement.  CH explicitly states as much in its own pleading numerous times.   Accordingly, CH cannot obtain any relief on its Counterclaims in this Court and they should be dismissed.

ME1 28242294v.8

**B.**     **CH's Affirmative Defenses Should Be Stricken Because the Parties' Agreed to Arbitrate All Disputes Arising Under The Distribution Agreement.**

A motion to strike is appropriate where a party improperly pled one or more affirmative defenses. *Senju Pharmaceutical Co., Ltd. V. Apotex, Inc.*, 921 F.Supp.2d 297, 301 (D. Del. Feb. 6, 2013).   Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." When ruling on a motion to strike, "the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under the law.*" Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F.Supp.2d 353, 356 (D. Del. March 30, 2009) (citations omitted).   Here, the Court should strike CH's Second, Third, Seventh and Eighth Affirmative Defenses each of which are insufficient and immaterial to the matters before this Court.   Each of these Affirmative Defenses relates to and arises solely from the Distribution Agreement and, therefore, must be submitted to arbitration and are not properly before this Court.

**C.**     **The Court Should Compel Arbitration of CH's Counterclaims and Affirmative Defenses.**

A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement. *See PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002).   In conducting this limited review, the court must apply ordinary state-law principles that govern the formation of contracts, with a healthy regard for the strong federal policy in favor of arbitration."   *John Hancock Mut. Life. Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998); *Aliments Krispy Kernals, Inc. v. Nichols Farms*, 851 F.3d 283, 287-88 (3d Cir. 2017); *see also Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir. 2005).   "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is

16

not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986); *see also Stateside Machinery Co. v. Alperin*, 591 F.2d 234, 240 (3d Cir. 1979) ("doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration.").

The Distribution Agreement clearly and unambiguously requires the parties to submit all unresolved disputes arising under the Distribution Agreement to arbitration. Ex. A at § 17.3. The Distribution Agreement was subsequently modified by various amendments, described in detail above, none of which revoked or superseded the Distribution Agreement's arbitration and choice of law provision for any and all disputes that arise under it – which CH's claims undoubtedly do.

Further, the action pending before this Court is not about the Distribution Agreement at all. It is about the parties' Security Agreement. CH has not alleged any claims under the Security Agreement, in fact, the word "Security Agreement" never appears in the Affirmative Defenses or Counterclaims. Additionally, the Security Agreement and the Distribution Agreement do not address the "same" subject matter and thus whatever the Security Agreement might say about resolution of claims arising under it is irrelevant to CH's Affirmative Defenses and Counterclaims. The agreements are clear that the Distribution Agreement governs, *inter alia*, the sale of Motorcoaches in a specified territory, and the price and payment terms on which CH is obligated to pay Temsa and Temsa is obligated to ship Motorcoaches to CH. But more broadly, the Distribution Agreement is about Temsa and CH's entire business relationship with one another – but for that agreement, the parties would not be engaged in a contractual business relationship at all. The Distribution Agreement is the core agreement between the parties and the nexus of their dealings with one another – without it CH would not even be entitled to have

distributed Temsa Motorcoaches and would have had no basis for servicing Motorcoaches or submitting warranty claims.  The Security Agreement, on the other hand, covers the wholly separate and narrow issue of securing collateral in the event that CH defaults on its obligations to Temsa.  Thus, any argument that CH may make that the Security Agreement's venue and choice of law provisions supersede those of the Distribution Agreement fails.  Accordingly, there is undeniably a valid agreement to arbitrate CH's Affirmative Defenses and Counterclaims and this Court should compel arbitration.

> **D.** **Alternatively, If The Court Is Not Inclined to Dismiss CH's Counterclaims and Strike CH's Affirmative Defenses, It Should Stay Them Pending Arbitration.**

If the Court is not inclined to dismiss CH's Counterclaims and strike CH's Affirmative Defenses, the Court should stay the Affirmative Defenses and Counterclaims pending arbitration while moving forward with the claims asserted in Temsa's Complaint.  The District of Delaware and courts in other jurisdictions have held that where a defendant's counterclaim is covered by an arbitration clause, staying the counterclaim pending arbitration while allowing the plaintiff's complaint to be adjudicated before the court is appropriate.

In *China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.*, 747 F.Supp. 1101 (D. Del. Sept. 7, 1990), the plaintiff alleged claims arising from the breach of a 1989 purchase agreement.  Thereafter, the defendant filed a counterclaim alleging claims under an earlier and different contract, the 1987 contract.  *Id.* at 1103.  The 1987 contract contained an arbitration clause while the 1989 contract did not.  *Id.*  After the counterclaim was filed, the plaintiff filed a Motion to Stay Counterclaim Pending Arbitration.  *Id.* at 1104.  The court determined that the 1987 dispute was clearly covered by the broad arbitration agreement and granted the motion to stay the counterclaim pending arbitration.  *Id.* at 1109.

In *FUJIFILM North America Corporation v. Geleshmall*, 239 F.Supp.3d 640 (E.D.N.Y. 2017), the plaintiff commenced an action against a former distributor of its products and the distributor filed counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. *Id.* at 642. The plaintiff moved to dismiss the counterclaims and the defendant-distributor cross-moved to compel arbitration. *Id.* The Court addressed the issue of whether the counterclaims should be stayed or dismissed holding that, "once a court determines a dispute is covered by an arbitration agreement, that dispute may be stayed to allow arbitration." *Id.* at 647. Thus, the Court granted plaintiff's motion to dismiss in part and denied it in part – it held that the counterclaims were stayed, and if the defendant wanted to pursue them it had 30 days to commence arbitration, failing which they would be dismissed. *Id.* at 649.

Here, CH's Affirmative Defenses and Counterclaims are subject to arbitration and, therefore, dismissal of the Counterclaims and striking of the Affirmative Defenses is appropriate. However, if the Court is not inclined to dismiss Temsa's Counterclaims and strike CH's Affirmative Defenses, Temsa requests that the Court stay CH's Affirmative Defenses and Counterclaims pending arbitration.

## V.   CONCLUSION

For the forgoing reasons, Temsa respectfully requests that the Court grant its Motion and dismiss CH's Counterclaims and strike CH's Special Defenses, or in the alternative, stay the Affirmative Defenses and Counterclaims until after they are filed in the Arbitration and the arbitrator has decided whether it has jurisdiction.

ME1 28242294v.8

**McCARTER & ENGLISH, LLP**

/s/ David A. White
David A. White  (DE# 2644)
Matthew J. Rifino (DE# 4749)
405 N. King Street, Ste 800
Wilmington, Delaware 19801
Telephone:  302.984.6300
Facsimile:  302.984.6399

Thomas J. Finn (*Pro Hac Vice*)
James E. Regan (*Pro Hac Vice*)
185 Asylum Street
Hartford, CT 06119
Telephone:  860.275.6771
Facsimile:  860.560.5908

*Attorneys for Plaintiff*

20